CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
APR 10 2006
JOHN F. CORCORAN, CLERK
BY: /s/ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 3:04CR00047-3[1] |
| | ) | |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| TERRY SUGGS, JR., | ) | |
| a/k/a "Terry Kenny Moore," | ) | |
| a/k/a "T.Y." | ) | |
| | ) | By: B. WAUGH CRIGLER |
| Defendant. | ) | U.S. MAGISTRATE JUDGE |

In accordance with the provisions of Title 28 U.S.C. § 636(b)(3) and upon the defendant's consent, this case was referred to the undersigned to conduct a plea hearing.

**DEFENDANT'S RESPONSES TO RULE 11 INQUIRY**

The Grand Jury has returned a multiple count First Superseding Indictment charging defendant in Count One with conspiring to distribute and possess with intent to distribute various controlled substances in various quantities as set forth in the First Superseding Indictment, all in violation of Title 21, United States Code, Sections 841(a)(1) and 846; in Count Three with conspiracy to participate in a racketeer influenced and corrupt organization (RICO Conspiracy), in violation of Title 18, United States Code, Sections 1962(d) and 1963; in Count Eleven with possession with the intent to distribute marijuana, in violation of Title 21, United States Code, Section 841(a)(1); and in Count Twelve with using a firearm during and in relation to a drug trafficking offense, in violation of Title 18, United States Code, Sections 2 and 924(c)(1).

On April 6, 2006, a plea hearing was conducted before the undersigned, and the defendant entered a plea of guilty to a lesser included offense of Count One in the First Superseding

---

[1] The style of the case in the plea agreement erroneously reflects that defendant is the second defendant in the case.

Indictment. The government has agreed to dismiss Counts Three, Eleven, and Twelve of the First Superseding Indictment upon acceptance of plaintiff's guilty plea.

At this hearing the defendant was placed under oath and testified that his full legal name is Terry Suggs, that he was born on May 3, 1984, and that he completed the eleventh grade. The defendant stated that he can read, write, and understand the English language. The defendant stated that he was fully aware of the nature of the charges against him and the consequence of pleading guilty to those charges. The defendant further testified that he was not under the influence of alcohol, medicine, or any drug. Defendant stated that he had no other physical or mental condition which impaired his ability to understand the nature of the proceedings being held. Defendant's counsel stated that he had no reservations as to the defendant's competency to enter a plea of guilty to the offense.

The defendant testified that he had received a copy of the First Superseding Indictment pending against him and that he had fully discussed the charges therein, and his case in general, with his counsel. The defendant stated that he was pleading guilty of his own free will because he was, in fact, guilty of the offense charged. The defendant also stated that no one had made any promises, assurances or threats to him in an effort to induce his plea. The defendant testified that he understood that the lesser included offense of Count One which he is charged with is a felony, and that if his plea is accepted, he will be adjudged guilty of that offense. Moreover, the defendant testified that he understood that he will be required to pay a mandatory assessment of $100, and that, at the discretion of the court, he may also be denied federal benefits, as that term is defined in 21 U.S.C. § 862(a), for a period of years or indefinitely, as set forth in the plea agreement. The defendant acknowledged that he consented to the administrative forfeiture, official use and/or

destruction of any illegal firearms or contraband seized by any law enforcement agency from his possession or from his direct or indirect control. The defendant specifically testified that he understood that under the terms of the agreement he was waiving any right to appeal or to collaterally attack his conviction or sentence and that he was waiving his right to have a jury determine beyond a reasonable doubt the facts alleged in Count One, including any facts related to sentencing. The defendant further acknowledged that he consented to forfeit any right, title and interest he has in assets purchased with proceeds of his illegal activity, directly or indirectly and that such a forfeiture of property is proportionate to the degree and nature of the offense he committed and does not raise any of the concerns addressed in *United States v. Austin*, 113 S.Ct. 2801 (1993). The defendant stated that he understood that he must submit to the government a complete and truthful financial statement revealing all his assets and liabilities on a form provided by the government within thirty days of the date of the plea agreement. The defendant stated that he was waiving his right to raise the defense of the statute of limitations if for any reason the plea agreement is withdrawn or otherwise not consummated. The defendant also testified that he was waiving all rights under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act, 5 U.S.C. § 552a, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of his case.

The defendant was informed that the maximum possible penalty provided by law for the lesser included offense in Count One is twenty years imprisonment.[2]

The defendant was informed that under the Sentencing Reform Act of 1984, the United States

---

[2] At the hearing there was some confusion regarding the maximum penalty. Under any circumstances, defendant faces a maximum sentence of twenty years imprisonment, and he may face only five years imprisonment based on the weight of the drugs.

3

Sentencing Commission has issued guidelines for judges to follow in determining the sentence in a criminal case. The defendant was then informed that, in light of the United States Supreme Court's decision in *United States v. Booker*, 125 S.Ct. 738 (2005), the sentencing guidelines are no longer mandatory but that the sentencing judge may apply them in an advisory fashion in determining a reasonable sentence. The defendant stated that he understood that, contingent upon his acceptance of responsibility and continued cooperation in the sentencing process, and fulfillment of his duties under the plea agreement, the government will recommend a two-level (2) reduction, assuming that at the time of sentencing he meets the requirements of USSG § 3E1.1. The defendant also stated that he understood that the government is under no obligation to file a motion for substantial assistance, but that to the extent the government does exercise such discretion, he must provide such assistance in a manner set forth in the plea agreement. The defendant stated that he understood that a determination as to whether he had provided "substantial assistance" was a matter within the discretion of the United States Attorney's Office. The defendant testified that he understood if certain conditions are met he could be accepted into the Witness Security Program of the United States Department of Justice.

The defendant testified that he and his counsel had discussed how the sentencing guidelines might apply in his case. The defendant also testified that he understood that the court would not be able to determine the applicable guideline range, for advisory purposes, until after a presentence report has been prepared and both parties have been given an opportunity to challenge the reported facts and application of the guidelines. He stated that he understood that the eventual sentence imposed may be different from any estimate his attorney had given him and that the court has the authority to impose a sentence that is either higher or lower than that called for by the guidelines, so

long as the sentence is not greater than the statutory maximum for the offense to which the defendant is pleading guilty. The defendant stated that he knew that parole had been abolished and that if he is sentenced to prison he will not be released on parole but on supervised release, a violation of which could result in additional incarceration.

The defendant testified that he understood that he had the right to a trial by a jury, in addition to the following rights, which will be waived or given up if his guilty plea is accepted:

1. The right to plead not guilty to any offense charged against him;
2. The right at trial to be presumed innocent and to force the government to prove his guilt beyond a reasonable doubt;
3. The right of assistance of counsel at trial and in any subsequent appeal;
4. The right to see, hear and cross-examine witnesses;
5. The right to call witnesses to testify in his own behalf and to the issuance of subpoenas or compulsory process to compel the attendance of witnesses;
6. The right to decline to testify unless he voluntarily elects to do so in his own defense;
7. The right to a unanimous guilty verdict; and
8. The right to appeal a guilty verdict.

The defendant also testified that he understood that if he is adjudged guilty of these charges, he may be deprived of valuable civil rights, such as the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess a firearm.

The defendant stated that he was fully satisfied with the advice and representation given to him in this case by his counsel. The defendant also stated that he believed his counsel's representation had been effective. The defendant testified that he understood the possible consequences of his plea. The defendant asked the court to accept his plea of guilty to a lesser included offense in Count One of the First Superseding Indictment.

**THE GOVERNMENT'S EVIDENCE**

The defendant waived his right to have the government's Factual Summary read in open court and had no objection to the Summary. The Factual Summary having been filed in open court, the evidence presented therein regarding the offense charged is as follows:

Had this case proceeded to trial the government would have proved by competent and admissible evidence, beyond a reasonable doubt, that the defendant, Terry Suggs, Jr., aka Terry Kenny Moore, committed acts that constitute a violation of the crime of conspiracy to distribute fifty pounds of marijuana, a lesser included crime of Count One of the Superseding Indictment before the Court in this case, a violation of Title 21, United States Code, Section 846. Specifically, defendant was willingly and knowingly part of a group of people that transported marijuana and other narcotics from the Philadelphia, Pennsylvania, area to the Western District of Virginia, specifically the Charlottesville, Virginia, area. Witnesses would have testified to the following: In the spring of 2004, Lamont Payne was incarcerated in New Jersey. He arranged for Richard Johns, aka "Main," a co-defendant in this matter, and defendant to deliver a significant shipment of marijuana to Payne's brother, Jonathan Banks, aka "Jon-Jon" in Charlottesville. Payne arranged the transaction from jail, directing Johns and defendant in Philadelphia and his brother Jonathan Banks in Charlottesville.

On March 9, 2004, Johns sent 50 pounds of marijuana to Charlottesville with defendant, who drove it down in a rental car. When defendant arrived in Charlottesville, he gave the marijuana to Banks. Banks then brought 15 or 20 pounds of the marijuana to a hotel where Louis Bryant and defendant were waiting. Defendant packaged some of that marijuana, and Banks took the rest to his residence in Charlottesville. Banks showed the marijuana to several friends, including Robert Pryor, aka "Face." Banks left the marijuana in the trunk of his car for a period of time. Pryor broke into Banks' trunk and stole the remaining marijuana, approximately 35 pounds.

6

Pryor's theft of the marijuana generated a firestorm of violence that is documented in several racketeering acts in the Superseding Indictment that has been returned in this case. Banks quickly reported the theft to defendant and Bryant as soon as he discovered it. Bryant obtained a firearm and immediately went to Banks' apartment to confront those who had seen the marijuana. Bryant who was with defendant, threatened Banks, Leon Wilson, Brandon Scott, and Curtis Johnson, with the firearm inside Banks' apartment. Bryant and defendant then directed Banks, Wilson, and Johnson, to accompany them as they searched for Robert Pryor and the missing marijuana. Bryant directed Wilson to drive to various locations in Charlottesville, searching for Pryor. Bryant was armed with the gun the entire time, and he used it to threaten and intimidate the men in the car. He fired one shot out the car window, declaring that the next one would be fired into one of the passengers if he didn't find the missing marijuana.

Bryant and defendant eventually took Banks, Wilson, and Johnson, back to the hotel room they had rented through Bryant's sister. Bryant prevented Banks, Wilson, and Johnson, from leaving, as he still had not located Pryor or the missing marijuana. Bryant and defendant eventually learned that Pryor had left town, solidifying their suspicion that he stole the marijuana. They let Banks, Wilson and Johnson, go sometime on the afternoon of March 11.

The termination of the kidnaping did not end Bryant and defendant's pursuit of Robert Pryor. Often accompanied by Jonathan Banks, Bryant and defendant confronted family members and friends of Robert Pryor. Richard Johns, a co-defendant in this matter, came to Charlottesville to assist in the effort to locate Pryor and retrieve the missing marijuana. He brought several other men from Philadelphia. Bryant, defendant, Johns and the others searched for Pryor without success for weeks after the marijuana theft.

7

Robert Pryor lived on Orangedale Avenue in Charlottesville. On one occasion, shots were fired at Pryor's family's house. Bryant, Johns, and defendant also left a series of threatening messages on Pryor's cellular telephone voicemail.

Lastly, the government would have proved beyond a reasonable doubt that defendant had no applicable defense to this charge.

**FINDINGS OF FACT**

Based on the evidence presented at the plea hearing, the undersigned now submits the following formal findings of fact, conclusions and recommendations:

1. The defendant is fully competent and capable of entering an informed plea;

2. The defendant is aware of the nature of the charges and the consequences of his plea;

3. The defendant knowingly and voluntarily entered a plea of guilty to a lesser included offense in Count One; and

4. The evidence presents an independent basis in fact containing each of the essential elements of the offense to which the defendant is pleading guilty.

**RECOMMENDED DISPOSITION**

Based upon the above findings of fact, the undersigned RECOMMENDS that the court accept the defendant's plea of guilty to a lesser included offense in Count One and adjudge him guilty of that offense. A status hearing in this case has been scheduled before the presiding District Judge for May 31, 2006 at 10:00 a.m. in Charlottesville.

**NOTICE TO PARTIES**

8

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C): Within ten days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. The presiding District Judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. The presiding District Judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the undersigned. The judge may also receive further evidence or recommit the matter to the undersigned with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in this matter to the presiding United States District Judge.

The Clerk is hereby directed to send certified copies of this Report and Recommendation to all counsel of record.

ENTERED: /s/ [signature]
United States Magistrate Judge

April 18, 2006
Date